UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HEATHER J., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03459-TAB-SEB |
| | ) | |
| ANDREW M. SAUL Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S
## BRIEF IN SUPPORT OF APPEAL

### I.     Introduction

Plaintiff appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff challenges the ALJ's analysis, arguing that the ALJ's evaluation of her subjective symptoms was inadequate and that the ALJ failed to properly address Plaintiff's moderate limitations in concentration, persistence, and pace. Plaintiff essentially asks the Court to reweigh and re-analyze the evidence, which this Court does not do. As explained in more detail below, the ALJ's credibility assessment was not patently wrong, and the ALJ's decision was thorough, well-reasoned, and supported by substantial evidence. Accordingly, Plaintiff's request for remand is denied.

### II.    Background

Plaintiff filed an application for a period of disability and disability insurance benefits. The Social Security Administration denied her claims initially and upon reconsideration. After a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 416.920(a). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since applying for disability. At step two, the ALJ found that Plaintiff had the following severe impairments: mood disorder/depression/bipolar; generalized anxiety disorder; borderline personality disorder; posttraumatic stress disorder; and attention deficit hyperactivity disorder. The ALJ noted that these impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. The ALJ also referenced Plaintiff's complaints of back and neck issues but found the record failed to demonstrate a severe medically determinable physical impairment. The ALJ gave great weight to the consultative examiner's opinion that Plaintiff had no work-related functional limitations.

At step three, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ found that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled, routine, repetitive tasks with brief superficial interaction with supervisors, coworkers, and the public." [Filing No. 7-2, at ECF p. 17.]

Next, at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Finally, after taking into consideration Plaintiff's age, education, work experience, and RFC, the ALJ found at step five that jobs existed in significant numbers in the national economy that Plaintiff could perform, including house cleaner, router, and marker. The ALJ concluded that Plaintiff was not disabled.

**III. Discussion**

Plaintiff raises several challenges to the ALJ's analysis, claiming it was "riddled with error" and failed to properly address certain limitations. [Filing No. 11, at ECF p. 4.] The Court reviews an ALJ's decision and will uphold it "if the correct legal standards were applied and supported with substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations and quotation marks omitted). The Court's "review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

    **a. Evaluation of Plaintiff's subjective symptoms**

Plaintiff first argues that the ALJ's evaluation of her subjective symptoms was inadequate and failed to account for the severity of her symptoms. Specifically, Plaintiff contends that while the ALJ adequately listed each section of consideration required under SSR 16-3p, "some of her explanations and justifications within these sections are erroneous." [Filing No. 11, at ECF p. 21.] Furthermore, Plaintiff claims the ALJ demonstrated a lack of understanding of Plaintiff's severe mental impairments. This argument is unpersuasive.

As noted above, at step two, the ALJ listed Plaintiff's severe mental impairments, including depression, bipolar disorder, generalized anxiety disorder, borderline personality disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder. [Filing No. 7-2, at ECF p. 13.] The ALJ recognized that these mental impairments significantly limit the ability to perform basic work activities, but ultimately found that the record evidence did not support Plaintiff's subjective claims regarding their debilitating impact. The ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels except she could

only perform unskilled, routine, repetitive tasks and have brief interactions with supervisors, coworkers, and the public.

In reaching this conclusion, the ALJ cited Plaintiff's testimony describing her symptoms, including that she could not stand being around other people, hated to drive, and had problems with memory and concentration. [Filing No. 7-2, at ECF p. 17-18.] However, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" [Filing No. 7-2, at ECF p. 18.] "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). *See also Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) ("An ALJ is in the best position to determine the credibility of witnesses, and we review that determination deferentially. We overturn a credibility determination only if it is patently wrong." (Internal citations omitted.)).

The ALJ's assessment in this case was not patently wrong. In evaluating Plaintiff's subjective symptom allegations, the ALJ cited specific record evidence, including Plaintiff's mild examination results and her daily activities. Plaintiff challenges the ALJ's assessment of her daily activities, contending that the ALJ ignored that the "vast majority" of those activities take place within the confines of Plaintiff's home. [Filing No. 11, at ECF p. 22.] The ALJ summarized Plaintiff's daily activities, noting that while Plaintiff testified that she hated to drive, she had a driver's license and did drive. The ALJ also noted that Plaintiff was able to go out alone, as she reported independently going shopping and buying groceries. Plaintiff also testified that she takes her children to school activities, stating that she likes to be involved with school activities and to take her children to "parties and stuff" so she could record them on her

4

camera. [Filing No. 7-2, at ECF p. 43.] Thus, while some of Plaintiff's daily activities took place at home, the ALJ also specifically referenced activities Plaintiff completed outside the home. In addition, Plaintiff's daily activities—both in the home and outside of it—constitute some evidence that support the ALJ's determination that Plaintiff's allegations about the severity of her impairment were not fully supported or consistent with the record.

The ALJ also considered the record medical opinion evidence, including consultative examining psychologist Dr. Darren Higginbotham's evaluation. In Dr. Higginbotham's opinion, "[t]he impact of [Plaintiff's] symptoms on current daily functioning appears mild[.]" [Filing No. 7-9, at ECF p. 43.] Dr. Higginbotham concluded that Plaintiff appeared mentally capable of carrying out unskilled tasks but would be a poor fit for jobs requiring clear verbal communication and routine interaction with the general public. [Filing No. 7-9, at ECF p. 43.] The ALJ gave Dr. Higginbotham's opinion great weight because Dr. Higginbotham was an expert in psychology who examined Plaintiff. In addition, Dr. Higginbotham's opinion was well supported by clinical findings and largely consistent with the record.

The ALJ reviewed the opinions of state-agency reviewing physicians Drs. Amy Johnson and Joelle Larsen as well, who opined that Plaintiff should be restricted to work that involved brief, superficial interactions with fellow workers and the public, but noted that she was able to understand, remember, and follow simple instructions and could perform routine, repetitive tasks. The ALJ gave these opinions only partial weight, however, because while they were from acceptable medical sources and consistent with the evidence reviewed, the physicians did not have the benefit of reviewing additional evidence received at the hearing level which indicated Plaintiff's functional capacity was even higher than previously opined. [Filing No. 7-2, at ECF p. 20.] Nevertheless, these opinions also support the ALJ's determination.

Moreover, the ALJ specifically referenced Plaintiff's testimony that social interaction aggravates her symptoms. The ALJ addressed this concern by limiting Plaintiff to work with only brief, superficial interaction with supervisors, coworkers, and the public. The ALJ also noted, however, that despite displaying occasional mood/affect disturbance, Plaintiff was consistently cooperative and polite, and her daily activities failed to support her allegations. The ALJ ultimately concluded that "the record fail[ed] to support greater limitations of [Plaintiff's] work-related social functioning." [Filing No. 7-2, at ECF p. 19.] Plaintiff has not cited any record evidence to the contrary. As noted above, it is not the role of the Court to reweigh the evidence or substitute its judgment for that of the ALJ. *See, e.g., Summers*, 864 F.3d at 526.

Plaintiff also questions the ALJ's treatment of Plaintiff's allegations of vocal tics. The ALJ explicitly referenced Plaintiff's allegations and noted that Dr. Higginbotham observed Plaintiff had vocal tics, marked by a coughing or laughing sound, throughout his evaluation. The ALJ also noted, however, that physical consultative examiner Andrew Koerber did not indicate any vocal or facial tics. [Filing No. 7-2, at ECF p. 18.] The ALJ found that at most, Plaintiff's medical records documented a brief period when Plaintiff displayed a mild grimace, brow arch, blink, or eyelid trimmer. In addition, the ALJ commented that it appeared Plaintiff's tics were simply a medication side effect that resolved after a medication adjustment. [Filing No. 7-2, at ECF p. 18-19.] Plaintiff contends that the ALJ ignored records documenting Plaintiff's "psychomotor agitation" and when she presented as restless, fidgety, or squirmy. [Filing No. 11, at ECF p. 24.] But the ALJ, in fact, explicitly cited to clinical findings documenting instances of fidgeting or restlessness. [Filing No. 7-2, at ECF p. 19.] Plaintiff fails to cite any evidence with the opinion that her alleged tics or a psychomotor agitation would preclude work or require any work-related limitations beyond that which the ALJ already included.

6

Finally, Plaintiff contends that the ALJ demonstrated a lack of understanding of the impact Plaintiff's mental impairments may have had on her ability to follow through with recommended mental health treatment and medication. Plaintiff claims that her mental impairments prevented her from seeking more treatment and argues that the ALJ did not consider this possibility. Plaintiff correctly points out that while "a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). Here, however, it is not evident the ALJ drew a negative inference from Plaintiff's treatment history. The ALJ stated that from 2014 through late 2015, Plaintiff attended medication management visits roughly every three months with a mental health specialist. The ALJ also noted that Plaintiff began therapy or counseling with a mental health specialist in late 2016, but found "[t]his very minimal mental health treatment history appears somewhat inconsistent with [Plaintiff's] allegations of severe mental symptoms and functional limitations since the alleged onset date." [Filing No. 7-2, at ECF p. 20.] The ALJ simply recited Plaintiff's history of treatment and noted a potential inconsistency between the treatment sought and Plaintiff's allegations of severe impairment.

Plaintiff also elaborates on the fact that she was consistent with returning to her physicians for medication management and argues that this should bolster her credibility. Nothing in the ALJ's decision indicates that the ALJ discounted Plaintiff's allegations because of her medication history. In fact, the ALJ thoroughly documented Plaintiff's medication history, noting the type, dosage, effectiveness, and side effects of the various medications Plaintiff had been prescribed during the relevant time period. [Filing No. 7-2, at ECF p. 20.] The ALJ found that the overall record failed to show that Plaintiff suffered from significant ongoing side effects

that were inconsistent with Plaintiff's ability to work. Plaintiff has cited no evidence to the contrary. Thus, this argument is unpersuasive.

Moreover, even if the ALJ's characterization of Plaintiff's treatment or medication history was somehow improper, the ALJ had numerous other valid reasons for questioning Plaintiff's credibility and ultimately finding that Plaintiff's subjective allegations were not supported by the record, as previously discussed. *See, e.g.*, *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2019) ("[T]he ALJ's credibility determination here was not 'patently wrong' because the ALJ found [the claimant] 'not fully credible' for many specific reasons supported by the evidence."). *See also Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it." (Internal citation and quotation marks omitted)). Therefore, the ALJ's evaluation of Plaintiff's subjective symptoms was proper.

### b. Moderate limitation in concentration, persistence, and pace

Plaintiff also claims the ALJ failed to adequately address Plaintiff's limitations in concentration, persistence, or pace as well as alleged fatigue associated with insomnia. "The ALJ must explicitly account for all a claimant's limitations in her hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record." *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019).

In this case, the ALJ found that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace. Rather than explicitly addressing this moderate limitation, the ALJ included nonexertional limitations with Plaintiff's assessed RFC level, limiting Plaintiff to "unskilled, routine, repetitive tasks with brief superficial interaction with supervisors, coworkers, and the public." [Filing No. 7-2, at ECF p. 17.] And at the hearing, the

ALJ asked the vocational expert: "Assume a hypothetical individual who could perform work at all exertional level[s], except can perform unskilled routine, repetitive tasks with brief superficial interaction with supervisors, co-workers, and the public. Could this hypothetical individual perform any of the claimant's past work?" [Filing No. 7-2, at ECF p. 57.]

Plaintiff correctly notes that the Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014). *See also Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limits of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations."). In this case, however, the ALJ did not omit any documented limitations.

The ALJ elaborated on Plaintiff's reported symptoms, including that she could only pay attention for one minute and clinical findings of sporadic, inconsistent, or poor eye contact, fidgeting, and rapid, excessive, or pressured speech. The ALJ also noted, however, that at multiple visits Plaintiff maintained normal eye contact, normal speech, and normal behavior. Furthermore, clinical findings generally failed to indicate observed problems with tangential thought, hyperactivity, or distractibility. Instead, the ALJ found that the record medical evidence indicated that Plaintiff largely displayed good or fair attention and concentration, intact memory, and adequate abstract thinking skills. Finally, the ALJ referenced Plaintiff's daily activities and concluded that those activities—driving, handling money, going out alone, and performing household chores—failed to indicate more than a moderate limitation in concentration,

9

persistence, and pace. [Filing No. 7-2, at ECF p. 16.] Plaintiff cites no medical evidence indicating she was more limited than assessed.

Plaintiff also argues that she has "frequently reported and been treated for insomnia, difficulties sleeping, sleepiness during the day, and sedation due to medication side effects[,]" but argues the ALJ's decision did not address these issues. [Filing No. 11, at ECF p. 30.] Plaintiff cites *Allensworth v. Colvin*, 814 F.3d 831, 834-35 (7th Cir. 2016), in support of her argument that the ALJ's analysis and hypothetical question to the VE failed to properly account for these issues. But *Allensworth* is distinguishable. In *Allensworth*, the claimant suffered from sleep apnea and hypersomnia, and the Seventh Circuit concluded that the ALJ overlooked and understated the impact these major ailments had on the claimant's ability to work. *Id.* at 834. Here, by contrast, Plaintiff cites no record medical evidence that she suffered from or was diagnosed with a severe impairment such as sleep apnea or hypersomnia, nor does she point to any medical opinions concluding that she was limited due to alleged fatigue.

Therefore, even if the ALJ's RFC assessment or hypothetical question was flawed or failed to mention sleep issues, any error was harmless. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("Because Jozefyk did not testify about restrctions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand."). Similarly, Plaintiff here cites no medical evidence in the record indicating that Plaintiff experienced sleep issues or other symptoms that limited her beyond the ALJ's assessed limitations. Accordingly, the ALJ's RFC and hypothetical question adequately addressed Plaintiff's moderate limitations in concentration, persistence, and pace.

## IV. Conclusion

As the foregoing demonstrates, Plaintiff makes a number of challenges to the ALJ's analysis that fall short. To be sure, Plaintiff disputes the ALJ's conclusions. But mere disagreement with an ALJ's findings provides no basis for remand. In fact, the Court finds that, on the whole, the ALJ's decision was thorough and well-reasoned. Accordingly, the Commissioner's decision is affirmed. Plaintiff's request for remand is denied.

Date: 9/24/2019

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record via email